HERBERT E. BAKER and CAROL A. BAKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baker v. Commissioner
Docket No. 2185-74.
United States Tax Court
T.C. Memo 1976-133; 1976 Tax Ct. Memo LEXIS 265; 35 T.C.M. (CCH) 593; T.C.M. (RIA) 760133; April 29, 1976, Filed *265 Jerry L. Hayes, for the petitioners. Jack E. Prestrud, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined a deficiency of $969 in petitioners' Federal income tax for taxable year 1971. The only issue for decision is whether petitioners may allocate a portion of the purchase price of an insurance agency to a covenant not to compete, thereby enabling petitioners to claim amortization deductions. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, husband and wife, filed a joint Federal income tax return for the calendar year 1971 with the District Director of Internal Revenue, Cleveland, ohio. Herbert E. Baker (hereinafter referred to as "petitioner") resided in Tallmadge, Ohio, at the time the petition in this case was filed. Carol A. Baker resided in Kent, Ohio, at the time the petition was filed. The Gimbel Agency, Inc., was engaged in business as a casualty insurance agency in Portage County, Ohio, during all times material. The business was conducted as a sole *266 proprietorship by Jack L. Gimbel (hereinafter referred to as "Gimbel") for a number of years before its incorporation in Ohio on December 27, 1967. Prior to June 1, 1971, Gimbel owned 425 of the 500 shares outstanding of Gimbel Agency, Inc., and petitioner owned the remaining 75 shares. Petitioner was employed as the manager of the Gimbel Agency, Inc., and also served as its secretary. Gimbel purchased a gift shop in Boothbay Harbor, Maine, in October, 1968. During the summers of 1969 and 1970, Gimbel went with his family to Maine to operate the gift shop. The gift shop being a profitable operation, Gimbel determined in late 1970 or early 1971 to sell his stock in Gimbel Agency, Inc., and move to Maine. Accordingly, Gimbel offered to sell his 425 shares of stock to petitioner prior to March 16, 1971.
Petitioner and Gimbel met on March 16, 1971, in order to arrange the purchase from Gimbel of the 425 shares of Gimbel Agency, Inc., by petitioner. The purchase price of $66,300 was established for the 425 shares, based upon factors applied to various agency commissions received in 1970. There was no discussion of a covenant not to compete. Petitioner did not retain an attorney *267 until after the March 16, 1971, meeting. After that meeting, in reliance upon the advice of his attorney and in accordance with his own wishes, petitioner insisted upon, and obtained, Gimbel's agreement to include a covenant not to compete in the contract of sale. At that time, petitioner was aware of Gimbel's intention to move to Maine. On June 1, 1971, petitioner and Gimbel entered into an agreement whereby petitioner agreed to purchase the 425 shares of stock owned by Gimbel. The agreement provided: 2. Buyer agrees to pay Seller for said four hundred twenty-five (425) shares of common stock of Agency the sum of Sixty-six thousand three hundred Dollars ($66,300.00) payable in monthly installments of Seven hundred seventy and 02/100 Dollars ($770.02), which includes interest thereon at the rate of seven per cent (7%) per annum, with interest and principal amortized over a period of ten (10) years in equal monthly installments. * * * The Buyer agrees to execute and deliver to Seller a cognovit promissory installment note for the principal amount of the purchase price on the terms and conditions herein set forth. 3. Seller agrees that in consideration of the payment *268 by Buyer as herein provided, Buyer shall have the right to use the corporate name, particularly the GIMBEL name, and shall have free use of the Guardsman Emblem. 4. Seller agrees, in and for the consideration above named, that he will not engage in the casualty insurance business within Portage County, Ohio, either directly or indirectly, on his own account or as partner, stockholder, employee or otherwise, for a period of three (3) years from June 1, 1971. * * *
6. Buyer acknowledges that he has actively participated for at least five (5) years in the operation of Agency and has in all respects been, for a considerable amount of time, the manager of said Agency and has personal knowledge of all of Agency's personal property, receivables and accounts, and relies upon his own knowledge as to the existence of said property, receivables and accounts, notwithstanding any statements or representations which have been made to him by Seller. The sale was subject to the approval of Alice E. Gimbel or of the Portage County Court of Common Pleas, since Gimbel was under a restraining order not to dispose of his assets. The agreement further provided that the 425 shares *269 of stock were to be placed in escrow until the petitioner paid the promissory note in full. Petitioner agreed to lease the offices occupied by the agency from Gimbel and Alice E. Gimbel. Gimbel agreed to surrender all licenses with named insurance companies, while petitioner assumed all liabilities in connection with guaranty agreements to the insurance companies. Following the execution of the sale agreement, Gimbel left Ohio and moved to Boothbay Harbor, Maine, in order to manage the gift shop. Gimbel resided in Maine from June 2, 1971, to the time of trial. In the course of preparing petitioner's Federal income tax returns for 1971, the petitioner's accountant determined that $31,575 of the purchase price of the 425 shares of stock in Gimbel Agency, Inc., was attributable to the covenant not to compete and amortizable over a period of five years. Petitioner filed a Federal income tax return for 1971, in which he deducted $3,684, representing seven months' amortization of the covenant not to compete. The respondent determined that no amount was allocable to the covenant not to compete and consequently disallowed the deduction. OPINION The petitioner was employed by *270 and owned 15 percent of the stock of Gimbel Agency, Inc., an insurance agency. Gimbel owned the remaining 85 percent. Gimbel had a summer business in Maine, and was prepared to give up his business connections in Ohio and move to Maine. As a result, petitioner and Gimbel entered into an agreement whereby the petitioner purchased the remaining stock of the Gimbel Agency, Inc., for the sum of $66,300. After agreeing upon the price, the petitioner requested that the agreement of purchase include a covenant on the part of Gimbel not to engage in the casualty insurance business in Portage County, Ohio, for a period of three years. No additional consideration was provided for on account of this covenant. In the preparation of petitioner's income tax return for the taxable year 1971, the accountant concluded that some amount of the purchase price should be allocated to the covenant not to compete. Applying hindsight, the accountant allocated $31,575 to the covenant, which the petitioner seeks to amortize over the period of five years. We thus have a situation where neither the petitioner, as purchaser of the stock, nor Gimbel, as seller of the stock, intended to allocate any amount *271 of the purchase price to the covenant not to compete at the time the contract was entered into. See ; ; . Since Gimbel had no intentions of engaging in the insurance business in Ohio, he had no reason to place any value on that covenant. See ; The only basis for assigning any value to the covenant was that, in the opinion of petitioner's accountant, the price paid for Gimbel's shares greatly exceeded the book value of the stock. In order to prevail, it is incumbent upon the petitioner to present "strong proof" that a part of the consideration set forth in the agreement was, in fact, paid to Gimbel in consideration of his covenant not to compete. See ; ; . *272 Such proof is wholly lacking. Petitioner's counsel admits this much. In a colloquy with the Court, he said: THE COURT: As I understood, I -- as I understood the petitioner, he -- at the time he entered into the agreement he -- he made no allocation either in his mind's eye or anything else to the covenant not to compete; isn't that right? That's the way I understand his testimony. MR. HAYES: I don't think there's any question before the Court that the petitioner did not allocate a specific amount, but that -- THE COURT: Or any amount. MR. HAYES: Or any amount to that. THE COURT: All right. Now, I don't know that his accountant can come in after the fact and say, "Well, look here, he must have paid something for it because what he bought wasn't worth much without it." Isn't that your case? MR. HAYES: That is exactly my case and -- THE COURT: Well, I don't know -- MR. HAYES: -- that is exactly what the Courts in previous -- with similar facts -- This Court knows of no basis upon which to assign a part of the consideration, ostensibly paid for the stock, to a covenant not to compete where the parties to the agreement--and particularly the petitioner here--did *273 not at the time contemplate that he was paying anything for the covenant. In fact, for all that this record shows, Mr. Gimbel freely gave the covenant because he had no intention of engaging in the insurance business in the State of Ohio once he had sold the stock of Gimbel Agency, Inc. Decision will be entered for the respondent.